AFFIRMED BY UNPUBLISHED MEMORANDUM.
McMILLAN, P.J., and WISE, J., concur; COBB, J., concurs in part and concurs in the result in part, with opinion, which SHAW, J., joins.
COBB, J., concurring in part and concurring in the result in part.
John Stephen Coleman was indicted for capital murder, but was convicted of the lesser-included offense of manslaughter, a violation of §13A-6-3(a)(2), Ala. Code 1975. Coleman contends that the trial court erred in refusing his requested jury instruction on "causal connection."
I concur in the result to Part II of the majority's unpublished memorandum because I disagree with the majority's conclusion that Coleman failed to preserve his claim that the trial court erred in refusing to give his requested jury charge on "causal connection."
At the conclusion of the evidence the following occurred at the charge conference.
 "THE COURT: . . . And the defense has agreed to limit their request of charges to the pattern on . . . a causal connection charge. . . .
"Is that right, Mr. Whatley [defense counsel]?
"MR. WHATLEY: I think that's right. . . . *Page 767 
 "MR. WHIGHAM [prosecutor]: Judge when you mentioned causal connection, are you considering giving that charge?
 "THE COURT: I'm considering looking at one, if they find one. I told them I would look at one, if they wanted one looked at.
"MR. WHIGHAM: Judge, how can that possibly be?
 "THE COURT: I'm not going to argue it now. I said I'd look at it once they've requested it. I don't see how it can be a charge either, but I'm not going to rule it out without looking at the charge.
". . . .
"Anything else for the Record on the charge?
 "MR. BRUNSON [defense counsel]: I've just got to get you something up between now and —
 "THE COURT: Give me something on causal connection and I'll look at it. The standard charge preliminarily will be the same that I've given pretrial about reconciling the testimony and reasonable doubt and all of those things.
 ". . . I think you need to come up with a charge that you want, suggest it, and then we'll talk about it. I'll tell you the same thing I told Mr. Whigham. I'm not going to argue about it until you give me something to do.
"Anything else?
 "You've got it? Go ahead. This is the defendant's requested charge on causal connection.
 "MR. BRUNSON: If you reasonably believe from the evidence presented that James Clark's death could have been caused by a pulmonary embolism, he is entitled to a verdict of not guilty on all charges.
"THE COURT: State's response? . . .
 "MR. WHIGHAM: Judge, that would be a super charge for the defense. However, according to the evidence of the law, it is not consistent with the testimony as it came before the jury. Mr. Brunson is getting mixed up with what questions he asked and what answers he got.
 "MR. BRUNSON: It's the element of each one of these crimes that the victim's death was caused by the action of — solely by the action of the defendant shooting him. And if they find that he died from something else, they have not met the burden of that element. And I think because we brought that up, we're entitled to a separate charge.
"THE COURT: Anything else? Anything from the state?
"MR. WHIGHAM: No, sir.
"THE COURT: Denied. See you in the morning."
(R. 530-34.)
The majority finds that Coleman's claim that the trial judge erred in refusing his requested jury charge is not preserved for appeal because, after the trial court stated "Denied," to the requested jury instruction, counsel did not specifically object. Although I would normally agree with that conclusion, I cannot do so under the specific facts of this case. I believe that in the instant case, for the reasons that follow, requiring the defense to pursue the issue further after the trial court denied the request is to elevate form over substance.
The majority cites Bullock v. State, 697 So.2d 66 (Ala.Crim.App. 1997), as authority for finding that Coleman's claim was not preserved. I acknowledge that Bullock and the plethora of cases similar to Bullock
were correctly decided. However, the circumstances in this case, as stated above, are distinguishable from the facts in Bullock. In Bullock, the appellant requested an instruction on manslaughter at the *Page 768 
charge conference. The trial court refused to give the charge and stated its reasons for refusing. It appears in Bullock that in addition to failing to object, no grounds in support of the requested charge where made known to the trial court. Thus, this Court cited Rule 21.3, Ala.R.Crim.P.,[1] Hardeman v. State, 651 So.2d 59 (Ala.Crim.App. 1994), Booker v. State, 645 So.2d 355 (Ala.Crim.App. 1994), Corbin v.State, 551 So.2d 429 (Ala.Crim.App. 1989), Kilpatrick v. State,602 So.2d 465 (Ala.Crim.App. 1992), and Norsworthy v. State, 542 So.2d 950
(Ala.Crim.App. 1989), for the proposition of law that in order to preserve the trial court's refusal to give a requested jury charge, "the party requesting the charge must object to the court's refusal to give the instruction and must state with particularity the grounds for the objection." Bullock v. State, 697 So.2d at 67. I believe those cases were correctly decided. I believe the instant case is distinguishable.
The purpose of Rule 21.3, Ala.R.Crim.P.,[2] and similar caselaw is to ensure that requested charges are timely presented to the trial court and supported by sufficient grounds to enable the trial court to rule correctly. Here, the requested instruction was timely presented to the trial court, and the trial court asked to hear the defense argument in support of the requested instruction. In response, the defense clearly expressed with "particularity the grounds" Bullock, 697 So.2d at 67, supporting its alleged entitlement to the requested charge. At this point the trial court abruptly ended the proceeding by stating "Denied. See you in the morning." (R. 534.) I believe that once the trial court heard the defense's explanation for why it was entitled to the requested charge and then denied the request, no further discussion on the issue was necessary to preserve it for appellate review. I believe that the discussions preceding the denial were tantamount to, and understood by the trial court to be, an objection should the trial court refuse to give the requested charge. Otherwise, to follow Rule 21.3 Ala.R.Crim.P., to the letter would require the defense to advise the trial court of its grounds in support of a requested charge, then, should the charge be denied, object and repeat the grounds just offered in order to preserve the review of the denial on appeal. I also do not believe that the trial court would have abruptly ended the proceedings had it not believed that the denial of the requested charge was preserved.
Thus, I believe that in the instant case "`it would be "unreasonable and both realistically and practically indefensible to hold that the appellant waived this issue."'" Toles v. State, 854 So.2d 1171, 1175
(Ala.Crim.App. 2002) (quoting Ex parte Weaver, 763 So.2d 982, 986 (Ala. 1999), quoting in turn Felder v. State, 593 So.2d 121, 123
(Ala.Crim.App. 1991)).[3] I believe that based on the charge conference,[4] *Page 769 
Coleman's claim on appeal is preserved for appellate review.
However, I agree with the majority that the trial court correctly refused to give the requested charge. In this case, the victim died in the hospital some six days after being shot in the head with a bullet fired from a .30-.30 caliber rifle. Dr. John Hackman, the neurological surgeon attending the victim, testified that the victim never regained consciousness, but that he seemed to be improving when he died, in the doctor's opinion, of a blood clot (pulmonary embolus). Dr. Hackman continued, stating that if "the pulmonary embolus killed [the victim], that came about because he was immobile in bed . . . because he was shot in the head and paralyzed." (R. 363.) Dr. Hackman testified that there was "no question in [his] mind" that "the cause of death was a gunshot wound." (R. 351.) Dr. Ben L. Bristol, the medical examiner for the Alabama Department of Forensic Sciences who conducted an autopsy on the victim, testified that the victim's cause of death was "a gunshot wound to the head." (R. 294.)
As stated above, the defense requested the following charge:
 "If you reasonably believe from the evidence presented that James Clark's death could have been caused by a pulmonary embolism, he is entitled to a verdict of not guilty on all charges."
(R. 533.)
 "The trial judge may refuse to give a requested jury charge when the charge is either fairly and substantially covered by the trial judge's oral charge or is confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law."
Harris v. State, 794 So.2d 1214, 1220 (Ala.Crim.App. 2000), citingHemphill v. State, 669 So.2d 1020, 1021 (Ala.Crim.App. 1995), and Exparte Wilhite, 485 So.2d 787 (Ala. 1986).
The requested charge was misleading and was "not predicated on a consideration of the evidence." Harris, 794 So.2d at 1220. Under the facts of this case, if a blood clot caused the victim's death, the blood clot was logically related to the gunshot. Moreover, two doctors testified, the cause of death was the gunshot wound.
Based on the above, I concur in the result to Part II of the majority's unpublished memorandum. As to the remaining issues, I concur.
SHAW, J., concurs.
[1] Rule 21.3 was previously numbered Rule 21.2, Ala.R.Crim.P., before an amendment to Rule 21 effective August 1, 1997.
[2] Rule 21.3, Ala.R.Crim.P., provides:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
[3] Clearly, the situation in Toles is factually distinct from the case before us. I cite Toles only to use the quoted language, because I believe it is equally appropriate in this case.
[4] Coleman did not, and it was unnecessary that he, renew his objection at the conclusion of the trial court's charge to the jury.
 "[W]here . . . a defendant clearly objects at the charge conference to the trial court's refusal to give a written requested charge and states specific reasons for that objection, he is not required to renew his objection at the close of the oral instructions to preserve that issue for appellate review."
Molton v. State, 651 So.2d 663, 666 (Ala.Crim.App. 1994); Withee v.State, 728 So.2d 684, 688 (Ala.Crim.App. 1998) ("A defendant may make a clear objection at the charge conference in lieu of objecting at the close of the oral instructions.")